### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., as subrogee of Ralph Santaniello, | Civil No. 12-2588 (NLH/KMW) |
| Plaintiff, | **OPINION** |
| v. | |
| OMEGA FLEX, INC., et al., | |
| Defendants. | |

<u>**APPEARANCES**</u>

Jared Laurence Elster, Esquire
Thomas Paolini, Esquire
Law Offices of Robert A. Stutman, P.C.
20 East Taunton Road
Suite 403
Berlin, New Jersey 08009
    *Attorneys for Plaintiff Fidelity and Guaranty Insurance*
    *Underwriters, Inc. as subrogee of Ralph Santaniello*

Angela Marie Catanach, Esquire
Campbell Campbell Edwards & Conroy, P.C.
1205 Westlakes Drive
Suite 330
Berwyn, Pennsylvania 19312
    *Attorney for Defendant Omega Flex, Inc.*

William D. Pastorick, Esquire
Jeannie Park, Esquire
Nelson Levine Deluca & Hamilton, LLC
535 Route 38 East
Suite 501
Cherry Hill, New Jersey 08002
    *Attorneys for Defendant Drexel HVAC, Inc.*

**HILLMAN, District Judge**

This matter comes before the Court by way of Defendant Drexel HVAC, Inc.'s motion [Doc. No. 12] seeking to dismiss Counts IV, V, and VI of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant's motion is granted in part and denied in part.

I.   **JURISDICTION**

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship between the parties and an amount in controversy in excess of $75,000. Plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. ("Fidelity" or "Plaintiff") brings this action as subrogee of its insured, Ralph Santaniello.[1]  Fidelity is a citizen of the state of Minnesota because it is a corporation organized and existing under the laws of Minnesota with its principal place of business

_____

[1] The citizenship of Fidelity – as subrogee for its insured – is determinative for purposes of diversity jurisdiction, and thus the Court need not consider the citizenship of Fidelity's insured – subrogor Ralph Santaniello.  See Fallat v. Gouran, 220 F.2d 325, 326 (3d Cir. 1955) (citing City of New Orleans v. Whitney, 138 U.S. 595, (1891)) (explaining that the "Supreme Court [previously] held that the plaintiff-subrogee's citizenship, rather than the subrogor's, determined the existence of diversity jurisdiction in a suit against a third party.").

there.  (Compl. [Doc. No. 1] ¶ 1.)  Both Defendant Omega Flex,
Inc. ("Omega") and Defendant Drexel HVAC, Inc. ("Drexel") are
incorporated and maintain their principal places of business in
the Commonwealth of Pennsylvania and are therefore citizens of
Pennsylvania.  (Id. ¶ 4.)  Accordingly, complete diversity of
citizenship exists between the parties in this action.  The
amount in controversy is met because the allegations contained in
Plaintiff's complaint sufficiently demonstrate that the damages
sought are in excess of $75,000, exclusive of interest and costs.

## II.   BACKGROUND

Fidelity brings this action as subrogee of its insured,
Ralph Santaniello, seeking to recover payments previously made to
Santaniello under a homeowners' insurance policy as a result of a
fire at Santaniello's home that occurred on or about May 14,
2010.  (Id. ¶¶ 2-3, 12, 15, 18-19.)  According to Fidelity, the
fire resulted from the failure of a product known as corrugated
stainless steel tubing ("CSST") which was installed at the
Santaniello home by Drexel sometime prior to May 14, 2010.  (Id.
¶ 14, 16.)  Fidelity contends that Drexel installed a brand of
CSST known as TracPipe and manufactured by Omega for use in the
distribution of natural gas and propane in, *inter alia*,
residential homes, such as Santaniello's.  (Id. ¶¶ 5.)

Fidelity alleges that on approximately "May 14, 2010, a

lightning strike occurred at or near" the Santaniello home that
"energized the CSST, which failed and punctured." (Id. ¶ 15.)
Fidelity further contends that the "failure of the CSST allowed
gas to escape[,]" resulting in a "substantial fire that caused
significant damage" to the home and its contents. (Id. ¶ 16.)
Ultimately the home required reconstruction and Santaniello's
personal property was destroyed. (Id. ¶ 17.) As a result of the
damage and the need for reconstruction, Santaniello was forced to
temporarily relocate and thereby incurred living expenses during
the time the home was under construction. (Id.) Contractually,
legally, and equitably subrogated to the rights of recovery of
Santaniello as the insured, Fidelity now seeks to recover damages
for payments made to, or on behalf of, Santaniello under the
policy as a result of the damage from the fire. (Id. ¶ 19.)

Based on these allegations, Fidelity asserts claims against
Omega for negligence in Count I, breach of warranty in Count II,
and strict liability in Count III. (Id. ¶¶ 20-28.) Fidelity
similarly brings claims against Drexel for the same three causes
of action — negligence in Count IV, breach of warranty in Count
V, and strict liability in Count VI. (Id. ¶¶ 39-57.)

III. **DISCUSSION**

At this time, Drexel moves for the dismissal of Counts IV,
V, and VI pursuant to Federal Rule of Civil Procedure 12(b)(6)

4

for failure to state a claim upon which relief can be granted. In considering Defendant's motion, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950).  "[A] complaint must

5

do more than allege the plaintiff's entitlement to relief."
Fowler, 578 F.3d at 211; see also Phillips v. County of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's
Twombly formulation of the pleading standard can be summed up
thus: 'stating ... a claim requires a complaint with enough
factual matter (taken as true) to suggest' the required element.
This 'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element.") (citing Twombly, 550 U.S. at 556).  "The
defendant bears the burden of showing that no claim has been
presented." Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

## IV. __ANALYSIS__

In seeking to dismiss Counts IV, V, and VI, Drexel makes
three primary arguments.  Initially, Drexel asserts that under
New Jersey law,[2] the Products Liability Act ("PLA") provides the

---

[2] In its brief, Drexel provided a choice of law analysis
asserting that New Jersey law applies in this case. (Drexel's
Mem. of Law [Doc. No. 12-2] 3-4.)  Fidelity's brief does not
address any choice of law issues and relies on New Jersey law
throughout, seemingly demonstrating that Fidelity does not
challenge the application of New Jersey law. (Fidelity's Mem. of
Law in Opp'n [Doc. No. 15] 2, 5-9.)  Because the parties agree
that New Jersey law is applicable to Fidelity's claims and there
appears to be no other forum which has a strong competing
interest in the resolution of this case, the Court will not, sua
sponte, challenge the parties' assertion and therefore applies
New Jersey law here.  Cf. Pierce v. Capital Cities Commc'ns,
Inc., 576 F.2d 495, 502 (3d Cir. 1978) ("In the absence of any

exclusive remedy for all claims brought based on harm caused by a product. (Drexel's Mem. of Law [Doc. No. 12-2] 4.) Therefore, Drexel argues that Fidelity's negligence and breach of implied warranty claims asserted in Counts IV and V are subsumed by the PLA and must be dismissed. (Id. at 4-5.) Drexel further argues that Fidelity's breach of express warranty claim asserted in Count V must also be dismissed because Fidelity failed to identify and plead any express representations (verbal, written or otherwise) made by Drexel regarding the CSST at issue here. (Drexel's Reply Br. [Doc. No. 17] 3-4.) As to Fidelity's strict liability claim, Drexel argues that this claim must be dismissed because Drexel is entitled to seller immunity under the PLA because it is not the manufacturer of the CSST. (Drexel's Mem. of Law 6-8.)

### A.    Subsumption Under the New Jersey Products Liability Act

Under the New Jersey PLA, a manufacturer or seller of a product can be held liable if the plaintiff proves that the "product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to

---

suggestion that there exists here a true conflict of law that is, that Pennsylvania law differs from that of another interested forum having a strong competing stake in the case arguably outweighing Pennsylvania's interest there is no occasion to diverge from the parties' position.")

the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner."  N.J. STAT. ANN. § 2A:58C-2.

As defined by the PLA, a manufacturer is "any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product[.]"  Id. § 2A:58C-8.  Additionally, the seller of a product may qualify as a manufacturer to the extent the "product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale[.]"  Id.  A product seller is defined as "any person who ... sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce."  Id.

The PLA was enacted by the New Jersey Legislature in 1987 "based on an 'urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products.'"  Sinclair v. Merck & Co., Inc., 948 A.2d 587, 593 (N.J. 2008) (citing N.J. Stat. Ann. § 2A:58C-1(a)).  As the New Jersey Supreme Court has explained, by enacting the PLA "'[t]he Legislature intended ... to limit the liability of manufacturers so as to "balance[ ] the interests of

8

the public and the individual with a view towards economic reality."'" <u>Sinclair</u>, 948 A.2d at 593 (citing <u>Zaza v. Marquess & Nell, Inc.</u>, 675 A.2d 620, 627 (N.J. 1996)). Thus, under New Jersey law, the PLA governs any "product liability action."

A product liability action is statutorily defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(3). The PLA further defines the type of "harm" caused by a product to include the following: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J. Stat. Ann. § 2A:58C-1(b)(2).

In <u>In Re Lead Paint Litigation</u>, the New Jersey Supreme Court set forth substantive guidance regarding the scope of the PLA and explicitly recognized that "'[w]ith the passage of the Product Liability Act, ... there came to be one unified, statutorily defined theory of recovery for harm caused by a product[.]'" 924 A.2d 484, 503 (N.J. 2007) (citation omitted). The New Jersey Supreme Court further observed that "[t]he language chosen by the Legislature in enacting the PLA [was] both expansive and

9

inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." <u>Id.</u> (citing N.J. Stat. Ann. § 2A:58C-1(b)(3) defining a "product liability action").

As this Court has acknowledged on several prior occasions, the "PLA does not recognize either negligence or implied breach of warranty as separate claims for harm caused by a defective product; those claims have been 'subsumed within the new statutory cause of action.'" <u>West v. Am. Honda Motor Co.</u>, No. 08-0700, 2008 WL 4104683, at *3 (D.N.J. Aug. 28, 2008) (citing <u>Tirrel v. Navistar Int'l, Inc.</u>, 591 A.2d 643, 647 (N.J. Super. Ct. App. Div. 2007)); <u>see also</u> Koruba v. Am. Honda Motor Co., 935 A.2d 787, 795 (N.J. Super. Ct. App. Div. 2007) (explaining that "the PLA 'no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for "harm[,]" [including personal injury,] caused by a defective product' or an inadequate warning.") (citation omitted); <u>Calender v. NVR, Inc.</u>, No. 10-4277, 2012 WL 4482009, at *3-4 (D.N.J. Sept. 26, 2012) (granting summary judgment to defendant on negligence and implied breach of warranty claims because they were subsumed by the PLA). "Rather, the exclusive method to prosecute such a claim is under N.J.S.A. 2A:58C-2 [the PLA] by proving that the product was not reasonably fit, suitable or safe for its intended purpose because it either contained a

manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner." Koruba, 935 A.2d at 795.  Under the New Jersey PLA, Section 2A:58C-2 "describes the sole method of proof, namely that recognized for strict liability claims[.]" Tirrell, 591 A.2d at 647.

> *(1) Count V – Implied Breach of Warranty Claim*

In paragraphs forty-six, forty-eight, and forty-nine of the complaint, Fidelity clearly alleges that Drexel made and breached both express and implied warranties regarding the CSST installed at the Santaniello property.  (Compl. ¶¶ 46, 48-49.)  To the extent Count V of the complaint asserts a claim for breach of implied warranty, Drexel correctly argues that this claim is subsumed by the PLA and must be dismissed.  See Koruba, 935 A.2d at 795.  Fidelity offers no argument in opposition to this premise, apparently conceding that its implied breach of warranty claim is subsumed by the PLA.  Accordingly, the Court dismisses Count V against Drexel to the extent it asserts a claim for breach of implied warranty.

Because the Court's ruling that a breach of implied warranty claim is subsumed by the PLA applies equally to the non-moving Defendant Omega, Count II of the complaint also fails and is therefore dismissed to the extent it asserts an implied warranty claim.  See Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) (explaining a court's inherent authority to

11

dismiss the action "provided that the complaint affords a sufficient basis for the court's action"); see also Michaels v. New Jersey, 955 F. Supp. 315, 331 (D.N.J. 1996) (Barry, J.) ("It is well established that, even if a party does not make a formal motion to dismiss, the court may, sua sponte, dismiss the complaint where the inadequacy of the complaint is clear."); see generally 5B Wright & Miller, Federal Practice and Procedure, § 1357 ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.")

The Court addresses the status of Fidelity's breach of express warranty claim against Drexel infra.

> *(2) Count IV - Negligence Claim*

Fidelity contends that its negligence claim asserted in Count IV is not subsumed by the PLA "because it is based upon Drexel's failure to install and test the ... CSST correctly rather than [Drexel's] mere sale or provision of a defective product." (Fidelity's Mem. of Law in Opp'n 5.) Fidelity essentially argues that it can maintain a separate cause of action for negligence against Drexel while also maintaining a PLA claim because liability on the negligence claim is "based on a breach of a duty arising independent of the manufacturer's duty

to provide a non-defective product[.]"  (Id. at 6.)  According to
Fidelity, Count IV sets forth the facts necessary to establish
negligence based upon Drexel's alleged "failure to properly
install and test the ... CSST."  (Id.)  Fidelity reasons that
Count IV is not subsumed by the PLA because "Drexel's breach of
its duty to install and test the CSST correctly is the essential
nature of this claim, which sounds in negligence, not products
liability."  (Id. at 7.)

Courts applying New Jersey law on this issue have clearly
acknowledged the distinction between a cause of action sounding
in negligence based on the improper installation of an otherwise
properly functioning product on the one hand, and a products
liability claim against an installer based on the otherwise
proper installation of a defective product.  See, e.g., Thomas v.
Ford Motor Co., 70 F. Supp. 2d 521, 530-31 (D.N.J. 1999)
(recognizing the distinction between imposing "liability ... on
an installer under the terms of the [Products Liability] Act
[where] the installer installs a product known to be defective"
and imposing liability under a negligence theory in "a
circumstance in which there was no defective product, but only a
defective installation."); Ridenour v. Bat Em Out, 707 A.2d 1093,
1097-98 (N.J. Super. Ct. App. Div. 1998) (finding that claims for
harm caused by negligent installation and maintenance where
distinct from PLA claims for harm caused by a defective product

13

based on an alleged failure to warn); <u>see also</u> <u>Underwriters Ins.</u>
<u>Group v. Pub. Serv. Elec. & Gas Co.</u>, 103 F. Supp. 2d 744, 747-48
(D.N.J. 2000) (explaining that "<u>Ridenour</u> makes it clear that
actions based upon conduct related to the improper installation
and maintenance of a product are not subject to strict tort
liability" under the PLA and are therefore not subsumed by the
Act).

     As recognized by the court in <u>Thomas</u>, a claim that an
installer improperly, or negligently, installed a non-defective
product does not fall within the ambit of the PLA and thus is not
subsumed.  50 F.2d at 530-31.  Accordingly, Fidelity is correct
in its general assertion that a cause of action based on the
negligent installation of a properly functioning, non-defective
product is not subsumed by the PLA under New Jersey law.
Fidelity is incorrect, however, that the complaint, as currently
pled, actually asserts a claim for negligent installation and
testing of the CSST.

     Fidelity's attempt to avoid dismissal of its negligence
claim simply by reclassifying Count IV in its briefing as one for
negligent installation of an otherwise properly functioning
product fails.  As Drexel accurately points out, the factual
allegations of the complaint are inadequate to allege a
negligence claim based upon a failure to properly install and
test the CSST.  (See Drexel's Reply Br. 1.)  Rather, as

14

demonstrated below, Count IV of the complaint alleges a
negligence claim based upon Drexel's alleged installation and
sale of an already defective product – a claim that falls
squarely within the ambit of the PLA and is subsumed by the Act.
See Thomas, 70 F. Supp. 2d at 530.

     With respect to Drexel's conduct, the factual assertions of
the complaint allege only: (1) that "Drexel was in the business
of supplying and installing heating and air conditioning systems,
and related plumbing work and more specifically installed the
CSST in the home at the [Santaniello] Property[;]" and (2) that
based on a contract between Drexel and Santaniello, "Drexel
performed plumbing work at the Property, including, but not
limited to, the installation of TracPipe brand CSST manufactured
by Defendant, Omega." (Compl. ¶¶ 7, 14.) Even accepting these
factual assertions as true and viewing them in the light most
favorable to Fidelity, a thorough reading of the complaint
establishes that Count IV does not assert a claim for negligently
(i.e., improperly) installing an adequately functioning product.

     By contrast, the essential nature of Count IV asserts that
Drexel was negligent because it installed a product it knew or
should have known was inherently defective at the time of
installation. To be clear, Fidelity does not assert facts in the
complaint that challenge the method, mode, or manner in which the
CSST was installed by Drexel at Santaniello's property. For

15

example, there are no allegations in the complaint that Drexel: utilized the wrong component parts, like fittings, when installing the CSST; or subjected the CSST to undue stress or strain during installation by over-bending or over-stretching the product; or inadequately fashioned the connections between the CSST and the fittings; or otherwise failed to employee properly trained technicians for installing CSST.  Instead, Fidelity simply challenges the mere fact of installation, (see Compl. ¶¶ 7, 14), as negligent where the product was known, or should have been known, to be defective, i.e. prone to fail.

Despite Fidelity's arguments to the contrary, the complaint clearly focuses its allegations against Drexel as arising under the PLA for installation of a defective product.  For example, Fidelity first sets forth that Drexel satisfies the definition of a product seller under the PLA.  Compare Compl. ¶ 40 (asserting that "Drexel was engaged in the business of installing, testing, inspecting, marketing, selling and/or distributing CSST, and did install, inspect, test, market, sell and/or distribute the CSST") with N.J. STAT. ANN. § 2A:58C-8 (defining a product seller as "any person who ... sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the

16

line of commerce.").

Fidelity goes on to allege that "Drexel knew, or had reason to know, of the purpose for which said CSST was intended and further had reason to know that a defect would cause said CSST to become an inherently dangerous instrumentality for users thereof, including the Plaintiff's insured, and thus owed Plaintiff's insured a duty of care and skill in the installation, inspection, testing, marketing, selling and/or distribution of the aforesaid CSST and to further exercise ordinary and reasonable care to ascertain that said CSST was reasonably fit for the purpose for which it was manufactured and intended to be used."  (Compl. ¶ 41.)  At its core, this paragraph asserts that because Drexel knew of the purposes for which the CSST was intended to be used and knew of a defect which would cause the CSST to become inherently dangerous, Drexel owed a duty to Fidelity's insured to either (1) make certain that the CSST was not defective or (2) to refrain from installing the CSST if in fact it was a defective product.

A claim that Drexel owed a duty to exercise reasonable care to ascertain whether the CSST was "reasonably fit for the purpose for which it was manufactured and intended to be used" tracks the precise language of Section 2A:58C-2 and demonstrates that Fidelity's claim for negligence is subsumed by the Act.  Section 2A:58C-2 provides in pertinent part that a product seller "shall

17

be liable in a product liability action ... if the claimant proves ... that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose[.]" N.J. STAT. ANN. § 2A:58C-2.  Similarly, Fidelity's assertion that the "CSST was dangerous, unsafe, defective and unfit for its intended use(s)[,]" (see Compl. ¶ 42), also speaks to a claim brought under the PLA.[3]

These allegations are not the equivalent of stating a claim that Drexel failed to install the CSST in an proper manner. Fidelity's complaint is clearly focused on the defective nature of the CSST itself and Drexel's alleged "negligence" for not installing a safer, non-defective product, rather than any claim that Drexel utilized an inappropriate, faulty, or otherwise deficient method of installation.  As currently pled, Count IV seeks to impose liability for installing a product that the installer – Drexel – allegedly knew, or should have known, was defective and could cause harm at the time of installation.  This type of general negligence claim is subsumed by the PLA, and is

_____

[3] To the extent Fidelity alleges that "Drexel was negligent, careless, willful, wanton, malicious and/or reckless in failing to observe and exercise a reasonable degree of care and skill in the installation, inspection, testing, marketing, selling and/or distribution of said CSST" and that such conduct resulted in the CSST being dangerous and defective, these allegations are merely legal conclusions which the Court may properly disregard in ruling on the motion to dismiss.  Fowler, 578 F.3d at 210-11. Moreover, these conclusions are not sufficiently supported by the facts asserted in the complaint which merely allege the basic premise that Drexel installed the CSST.

distinct from a claim asserting liability based on the installer's failure to properly install a product.

While Fidelity is not required at this stage to demonstrate the probably of its success of a claim for negligent installation, Fidelity is required to allege sufficient facts, taken as true, to raise a reasonable expectation that discovery will reveal evidence that Drexel improperly installed the CSST at the Santaniello property leading to the fire. However, at this time, the complaint fails to do so and simply alleges that Drexel was negligent for installing an already defective product. That claim is subsumed by the PLA, and is therefore dismissed. See, e.g., Calender, 2012 WL 4482009, at *3-4; West, 2008 WL 4104683, at *3; Koruba, 935 A.2d at 795; Tirrell, 591 A.2d at 647.

Count I also asserts a nearly identical negligence claim against Omega for allegedly breaching its duty of care and skill in the design, engineering, manufacture, inspection, testing, marketing, packaging, labeling, selling and distribution of the CSST and for failing to exercise reasonable care to ascertain that the CSST was reasonably fit for the purpose for which it was manufactured and intended to be used. (Compl. ¶ 22.) On its face, Count I is a general claim for negligence related to a defective product which is subsumed by the PLA. See, e.g., Calender, 2012 WL 4482009, at *3-4; West, 2008 WL 4104683, at *3; Koruba, 935 A.2d at 795; Tirrell, 591 A.2d at 647. Although

Defendant Omega did not move for dismissal of this claim, the Court, <u>sua</u> <u>sponte</u>, dismisses Count I for failure to state a claim pursuant to New Jersey law.   See Bryson, 621 F.2d at 559; Michaels, 955 F. Supp. at 331.

**B.   Breach of Express Warranty**

As both state and federal courts in New Jersey have recognized, in order to state a claim for breach of an express warranty[4] under N.J. Stat. Ann. § 12A:2-313, a plaintiff must properly allege: (1) that defendant made an affirmation of fact, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.[5] <u>Arlandson v. Hartz Mountain Corp.</u>, 792 F. Supp. 2d 691, 706 (D.N.J. 2011); <u>Simmons v. Stryker Corp.</u>, No. 08-3451, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008); <u>Arons v. Rite Aid Corp.</u>, No. BER-L-4641-03, 2005 WL 975462, at *9 (N.J. Super. Ct. Law

_____

[4] To the extent Fidelity argues that its breach of express warranty claim is not subsumed by the PLA, Fidelity is correct, but the Court must point out that Drexel does not argue the contrary.  (Drexel's Mem. of Law  5; Drexel's Reply Br. 3.) Drexel simply argues that Fidelity has failed to allege facts which support a breach of express warranty claim on the merits. (Drexel's Reply Br. 3-4.)

[5] Additionally, "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."  N.J. Stat. Ann. § 12A:2-313(1)(c).  The Court does not address this portion of the statute as it is not at issue here.

Div. Mar. 23, 2005).[6]  However, Section 12A:2-313(2) specifically provides that "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  N.J. STAT. ANN. § 12A:2-313(2).

In seeking dismissal of the breach of express warranty claim, Drexel argues that the complaint fails to allege any affirmation of fact, promise, or description about the CSST made by Drexel that became part of the basis of the bargain between Drexel and Fidelity's insured.  (Drexel's Reply Br. 3.) Moreover, Drexel contends that Fidelity does not specifically allege that the CSST did not conform to that affirmation,

---

[6] In both its moving brief and its reply brief, Drexel asserts that a breach of express warranty claim requires a plaintiff to plead a contract, a breach, damages and a confirmation that the aggrieved party performed its own contractual obligations.  (See Drexel's Mem. of Law 5-6; Drexel's Reply Br. 3.)  Drexel relies on the case of Hammer v. Vital Pharmaceuticals, Inc., No. 11-4124, 2012 WL 1018842, at *11 (D.N.J. Mar. 26, 2012), for this proposition.

The court in Hammer specifically stated that "[u]nder New Jersey law, a breach of express warranty claim has four elements: '(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.'" Hammer, 2012 WL 1018842, at *11 (citing Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007)).  However, this appears to be an improper citation as the Third Circuit in Frederico explained that these elements are necessary to "state a claim for breach of contract," not a breach of express warranty claim.

Therefore, to the extent Drexel argues that Fidelity's claim for breach of express warranty should be dismissed for failure to allege these elements, this argument fails and will not be considered by the Court.

promise, or description made by Drexel.  (<u>Id.</u>)  Drexel correctly
notes that "Plaintiff was required to identify the express
representation (verbal, written or otherwise), if one existed, in
its Complaint" but failed to do so, opting instead "to rely on
vague references to merchantable quality and design defect" which
only support a claim for breach of implied warranty.  (<u>Id.</u> at 4.)
Fidelity counters that "Drexel's choice of, and subsequent
installation of, CSST in ... Santaniello's home in lieu of a
safer alternative product constitutes an affirmation of the
fitness of the CSST to deliver gas fuel safely to the Property."
(Fidelity's Mem. of Law in Opp'n 8.)  According to Fidelity, it
sufficiently alleged that "the CSST failed during its intended
use thereby providing an actionable basis for a breach of
warranty claim which must be determined by a jury."  (<u>Id.</u>)

The Court agrees with Drexel that the allegations of the
complaint are insufficient to state a claim for breach of express
warranty.  Fidelity fails to identify any specific express
representations made by Drexel with respect to the CSST at issue.
For example, Fidelity asserts only that Drexel "knew or had
reason to known of the intended use of said CSST and expressly
... represented by warranty that said CSST ... would be
reasonably fit for the purpose for which it was intended to be
used, and ... was of merchantable quality and free from defects
of design and/or manufacture or other defects[.]" (Compl. ¶ 46.)

Significantly, Fidelity asserts that its insured "relied on the skill and judgment of [Drexel] ... and its representations and warranties in the purchase and/or use of said CSST[,]" (id. ¶ 47), but fails to identify any actual representations regarding the CSST.

Fidelity simply provides the Court and Drexel with a conclusory recitation of the elements for a breach of express warranty claim.  The Court need not credit such bald assertions in deciding the current motion.  The only purported "representation" Fidelity identifies is set forth in its opposition brief, rather than the complaint, wherein Fidelity claims that Drexel's "choice of, and ... installation of, [the] CSST" rather than a safer product "constitutes an affirmation of the fitness of the CSST to deliver gas fuel safely to" the home. (Fidelity's Mem. of Law in Opp'n 8.)  Even if the Court were to consider this assertion as if it were made in the complaint, Fidelity's contention is still woefully inadequate to constitute an affirmation of fact, a promise, or a description of the product sufficient to support a claim for breach of express warranty.  Accordingly, Count V of the complaint is dismissed to the extent it asserts a claim for breach of express warranty against Drexel.  Having already dismissed this Count regarding Fidelity's breach of implied warranty claim, Count V is dismissed in its entirety.

### C.   Strict Liability Under the PLA & Seller Immunity

The only remaining claim of Fidelity's complaint asserted against Drexel is Count VI which alleges a claim for strict liability.  As the Court explained supra, in New Jersey, Section 2A:58C-2 of the PLA represents the exclusive method to prosecute a claim that a product was not reasonably fit, suitable or safe for its intended purpose.  See Koruba, 935 A.2d at 795.  A claim asserted under the PLA is essentially the same as "that recognized for strict liability claims[.]"  Tirrell, 591 A.2d at 647.  Accordingly, Count VI, although entitled a claim for strict liability, in fact constitutes a claim brought under the PLA.

Drexel, however, argues that it is entitled to statutory immunity from Fidelity's PLA claim pursuant to Section 2A:58C-9 of the Act which provides that "[i]n any product liability action against a product seller," the product seller "shall be relieved of all strict liability claims [made against it], subject to the provisions set forth in subsection d. of this section," upon the filing by the product seller of "an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death or damage."  N.J. STAT. ANN. § 2A:58C-9(a)-(b); see also D.J.L. v. Armour Pharm. Co., 704 A.2d 104, 117 n.25 (N.J. Super. Ct. Law Div. 1997) ("While those in the wholesale and retail chain of distribution may potentially be liable for the foreseeable injuries proximately caused by

defective products intended for ultimate sale to the public, they
may be relieved from liability where they comply with the
exculpatory provisions of the Products Liability Act[.])

Although the underlying purpose of Section 2A:58C-9 is "to
reduce litigation costs borne by innocent retailers in product
liability actions[,] ... the statute relieves a seller of
liability only if it had no significant responsibility for the
alleged product defect and the manufacturer is amenable to
service of process and is likely to be able to satisfy any
judgment." Claypotch v. Heller, Inc., 823 A.2d 844, 851 (N.J.
Super. Ct. App. Div. 2003) (citations and internal quotations
omitted). Accordingly, even when a product seller submits the
affidavit required under subsection (a) certifying the correct
identity of the manufacturer, a product seller may still be
liable under subsections (c) or (d) if the seller "exercised some
significant control over the design, manufacture, packaging or
labeling of the product relative to the alleged defect in the
product which caused the injury, death or damage[; or] ... if
[t]he manufacturer has no known agents, facility, or other
presence within the United States[;] or [t]he manufacturer has no
attachable assets or has been adjudicated bankrupt and a judgment
is not otherwise recoverable from the assets of the bankruptcy
estate." Claypotch, 823 A.2d at 852 (citing § 2A:58C-9(c)(2),
(3), (d)(1)) (internal citations and quotations omitted).

25

Moreover, a product seller also may be subject to liability under subsection (d) "if it 'knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage; or ... created the defect in the product which caused the injury, death or damage.'" Claypotch, 823 A.2d at 852 (citing § 2A:58C-9(d)(2), (3)).

A product seller seeking immunity under Section 2A:58C-9(b) bears the burden of demonstrating that it is not subject to liability under any of the exceptions to seller immunity set forth in subsections (c) or (d). DeGennaro v. Rally Mfg. Inc., No. 09-443, 2011 WL 5248153, at *8 (D.N.J. Nov. 2, 2011) (citing Bashir v. Home Depot, No. 08-04745, 2011 WL 3625707, at *3 (D.N.J. Aug. 16, 2011)); see also Claypotch, 823 A.2d at 850-51. Accordingly, Drexel must prove that it is not liable under the PLA and has adequately complied with the requirements of Section 2A:58C-9. Despite the fact that the PLA provides a mechanism for sellers to avoid liability, the Court is cognizant that Section 2A:58C-9 "carves out a very limited exception to the PLA's overarching principle of imposing strict liability upon all entities in the chain of distribution, exempting only those whose

exclusive role is to make the finished, packaged and labeled
product available to consumers." <u>Smith v. Alza Corp.</u>, 948 A.2d
686, 693 (N.J. Super. Ct. App. Div. 2008).  Therefore, "a product
seller is relieved from liability only if it is 'truly innocent
of responsibility for the alleged defective product and the
injured party must retain a viable claim against the
manufacturer.'"  <u>Bashir</u>, 2011 WL 3625707, at *3.

　　　　Here, Drexel has failed to satisfy the requirements of
subsections (a) and (b) because Drexel has not submitted the
required statutory affidavit to either the Court or Fidelity.[7]
Drexel apparently relies on general assertions in the briefing
that the manufacturer of the CSST – Omega – is known and actively
participating in this litigation in an effort to be relieved of
liability.  Rather than file the necessary affidavit attesting to
evidence supporting immunity under the Act, Drexel relies heavily
on alleged pleading deficiencies asserting that there are no
facts alleged which demonstrate that Drexel either exercised
significant control over design, manufacturer, packaging or
labeling of the CSST; knew or should have known of the defect; or
created the defect.  (Drexel's Mem. of Law 7-8; Drexel's Reply
Br. 4.)  However, Drexel's reliance on deficiencies in the
complaint to order to prove its entitlement to immunity here is

―――――――――――――――

　　　[7] None of the parties submitted a copy of any affidavit
prepared by Drexel in this action, and the docket reflects that
Drexel did not file such an affidavit with the Court.

misplaced.  Drexel bears the burden to prove that subsections (c) and (d) are not applicable by "'presenting evidence to that effect or by pointing to a lack of evidence in the record supporting opposite conclusions.'"  <u>Bashir</u>, 2011 WL 3625707, at *3 (citation omitted).

The Court's independent review of the case law examining whether a product seller is entitled to immunity pursuant to Section 2A:58C-9 reveals that courts considering this issue overwhelming address the merits of potential seller immunity at the summary judgment stage of the proceedings, rather than on a motion to dismiss.  This research supports Fidelity's argument that a dismissal of its PLA claim at this stage of the proceedings is "unwarranted since [P]laintiff must conduct discovery in order to establish whether, and to what extent, Drexel ... was aware of the defective nature of TracPipe CSST and its propensity to fail when exposed to the energy from lightning strikes." (Fidelity's Mem. of Law in Opp'n 9.)  The Court agrees, and therefore denies Drexel's motion to dismiss Count VI under the PLA on the basis of product seller immunity at this time.  However, Drexel is free to raise this issue with the Court at a later stage of these proceedings by way of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

**D.   Fidelity's Request to Amend**

Fidelity argues that if the Court "find[s] that dismissal is

28

appropriate on even a single claim, the appropriate remedy would be to allow Fidelity to amend its Complaint, rather than to deprive Fidelity of its day in Court." (Fidelity's Mem. of Law. in Opp'n 4.)  Except in civil rights cases, however, a court is not obligated to afford a plaintiff the opportunity to amend his complaint, either *sua sponte* or following the dismissal of the complaint pursuant to a motion to dismiss.  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  An amendment may only be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  For the reasons set forth supra, permitting Fidelity to amend the complaint with respect to Counts IV and V is futile and this request is denied.

**V.    CONCLUSION**

For the foregoing reasons, Defendant Drexel HVAC, Inc.'s motion to dismiss [Doc. No. 12] is granted in part and denied in part.  As set forth in this Opinion, Drexel's motion is granted with respect to Count IV for negligence and Count V for breach of warranty, and these claims are dismissed with prejudice.  Similarly, with respect to Omega, Count I for negligence and Count II, to the extent it alleges a claim for breach of implied warranty, are dismissed with prejudice.  Drexel's motion is

denied with respect to Count VI under the New Jersey PLA.  An
Order consistent with this Opinion will be entered.


Date: March 26, 2013                s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.